THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE ) | |
| ) | |
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Misc. No. 07-MS-0052 (RBW) |
| ) | |
| I. LEWIS LIBBY, ) | |
|    also known as "Scooter Libby," ) | |
|    Defendant. ) | |
| ) | |
| Cr. No. 05-394 (RBW) ) | |

## I. LEWIS LIBBY'S OPPOSITION TO APPLICATION FOR ACCESS TO TRIAL EXHIBITS PLAYED TO THE JURY

Various members of the news media have requested, pursuant to Local Criminal Rule 57.6, immediate access to audio tapes of Mr. Libby's grand jury testimony once they are played to the jury, for purposes of inspection and copying. The news organizations claim that they have both a constitutional and common law right to such access. They are incorrect. They have no constitutional right of immediate access to the grand jury tapes and whatever common law right of access to judicial records they ordinarily may have is outweighed at this stage of proceedings by Mr. Libby's constitutional right to a fair trial. Given that disclosure while the trial is ongoing unnecessarily risks tainting members of an already shrinking jury panel, this court should, in an abundance of caution and for the protection of Mr. Libby's constitutional rights, exercise its discretion to deny the instant application.

RECEIVED
FEB - 5 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

- 1 -

## ARGUMENT

I. **THE PRESS HAS NO FIRST AMENDMENT RIGHT OF IMMEDIATE PHYSICAL ACCESS TO EVIDENCE INTRODUCED AT TRIAL.**

The news organizations contend, erroneously, that the First Amendment guarantees them immediate physical access to evidence introduced at a public trial so that they can inspect and copy such evidence. In support of this contention, they cite to the Supreme Court's decision in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), and the D.C. Circuit's decision in *Washington Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991). These cases are inapposite.

In *Richmond Newspapers*, the Supreme Court had no occasion to address the issue with which we are faced in this case. Rather, the Court was asked "to decide whether a criminal trial itself may be closed to the public upon the unopposed request of a defendant, without any demonstration that closure is required to protect the defendant's superior right to a fair trial, or that some other overriding consideration requires closure." *Id.* at 564.[1] In answering that question, the Court articulated the principle that "[a]bsent an overriding interest articulated in findings, the trial of a criminal case must be open to the public." *Id.* at 581. The Court said nothing about whether the First Amendment protects a much narrower right of the public (and, concomitantly, the press) to gain physical access to the evidence introduced at an open trial immediately upon its admission.

The news organizations contend that *Robinson* fills in that gap and stands for the proposition that the First Amendment encompasses not only public access to criminal proceedings, but also the public's right to inspect and copy audiotapes admitted at such proceedings. The news media places great reliance on the D.C. Circuit's statement that "[t]he first amendment guarantees the press and the public a general right of access to court

---

[1] Unless noted otherwise, all cites to *Richmond Newspapers* are to Chief Justice Burger's plurality opinion announcing the judgment of the Court.

proceedings and court documents unless there are compelling reasons demonstrating why it cannot be observed." 935 F.2d at 287. The news organizations, however, take the D.C. Circuit's reference to a "right of access . . . to court documents" out of context. *Robinson* did not involve audiotapes. It involved a plea agreement which the court had sealed from public view. The court held that the public was entitled to "access" to such agreements. *Id.* As the D.C. Circuit subsequently explained, "[a]n agreement that is accepted by the court, and on which a guilty plea is entered, *substitutes for the entire trial.*" *United States v. El-Sayegh*, 131 F.3d 158, 160-61 (D.C. Cir. 1997) (emphasis added). Thus, "it . . . makes sense to treat a completed plea agreement as equivalent to a trial," which must, absent compelling reasons for closure, be open to the public. *Id.* at 161. The issue of whether access to the information contained in a plea agreement is a right guaranteed by the First Amendment is not at all relevant to the question presented here of whether there is a right of immediate access to copy audiotapes that were played in open court. Unlike in *Robinson*, there is no threat that the press and, by extension, the public will be denied the ability to see and understand the evidence presented against Mr. Libby. Indeed, by reserving space in the courtroom for reporters and opening an overflow room and a separate media filing center, this Court has made extraordinary efforts to ensure that members of the press and the public have access to the trial.

In fact, contrary to the position taken by the news media, Supreme Court precedent forecloses the argument that the right of the press to inspect and copy evidence rises to the level of a constitutional command. *See Nixon v. Warner Communications*, 435 U.S. 589, 608-10 (1978); *see also Belo Broad. Corp. v. Clark*, 654 F.2d 423, 426-29 (5th Cir. 1981); *United States v. Beckham*, 789 F.2d 401, 406-09 (6th Cir. 1986); *In re American Broad. Cos.* (*United States v. Hinckley*), 537 F. Supp. 1168, 1171 n.5 (D.D.C. 1982) ("The broadcasters do not base their

request [for access to video and audio tapes admitted into evidence] on any constitutional right, a claim which would clearly be precluded by . . . *Warner Communications*, 435 U.S. at 608-10 . . . ."). The issue presented in *Warner Communications* was "not whether the press must be permitted access to public information to which the public generally is guaranteed access, but whether these copies of the White House tapes [admitted into evidence]—to which the public has never had *physical* access—must be made available for copying." 435 U.S. at 609. The Court held that neither the First nor Sixth Amendments included such a guarantee, stating that "[t]he requirement of a public trial is satisfied by the opportunity of members of the public and the press to attend the trial and to report on what they have observed." *Id.* at 610.

As was true in *Warner Communications*, that opportunity has been amply provided in this case. Indeed, the news organizations themselves acknowledge the great lengths to which this court has gone to ensure the media's unfettered access to the trial proceedings. Appl. for Access to Trial Exhibits Played to The Jury at 6 ("Appl."). Just as the Fifth Circuit emphasized in *Belo Broad. Corp.*, in this case "[m]embers of the press [are] allowed to listen as the tapes [are] played in court; transcripts [will be] prepared and distributed for their use; [and] reporters and broadcasters [are] free to report on this information as they wish[]." 654 F.2d at 427. Already having sufficient access to the proceedings and the evidence, the media now asks for "the right to play these tapes over the air waves; that the Constitution does not require." *Id.*

The Supreme Court has long acknowledged that "free speech and fair trials are two of the most cherished policies of our civilization," and that it is, accordingly, "a trying task to choose between them." *Bridges v. California*, 314 U.S. 252, 260 (1941). Fortunately, that is not a task this Court must undertake. Although there is a danger that widespread publication of the grand

jury tapes during trial will impinge on Mr. Libby's constitutional right to a fair trial, no constitutional right of the press is at issue.

## II.   MR. LIBBY'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL OUTWEIGHS ANY COMMON LAW RIGHT OF IMMEDIATE PHYSICAL ACCESS TO JUDICIAL RECORDS.

Mr. Libby does not dispute that there is a common law right of access to judicial records and documents which encompasses access to evidence introduced at a public trial. "It is uncontested, however, that the right to inspect and copy judicial records is not absolute." *Warner Communications*, 435 U.S. at 598; *see also In re Nat'l Broad. Co. (United States v. Jenrette)*, 653 F.2d 609, 613 (D.C. Cir. 1981). In determining whether to apply the common law right, "courts in politically sensitive cases" such as this one "have a responsibility to consider both the public's interests and the court's duty of fairness in the administration of justice." *Beckham*, 789 F.2d at 410 (citing *Warner Communications*, 435 U.S. at 597-602). Ultimately, "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Warner Communications*, 435 U.S. at 599.

Courts have identified several factors that ought to guide the exercise of this discretion. Prominent among them, as this Court properly recognized last week, is whether such access would pose a risk of undue prejudice to the defendant's constitutional right to a fair trial. *See, e.g., Belo Broad. Corp.*, 654 F.2d at 431 (holding that in determining whether to deny access, "the provision to a defendant of a fair trial is a reasonable and necessary concern of the presiding judge"); *United States v. Criden*, 648 F.2d 814, 826 (3d Cir. 1981) (concluding that the district court's finding that "release of the tapes at this time would seriously jeopardize the fair trial rights of the defendants" was "[t]he most serious factor" weighing in favor of a denial of access); *United States v. Edwards*, 672 F.2d 1289, 1293 (7th Cir. 1982); *cf. Jenrette*, 653 F.2d at 615

(holding "the defendant's interest in securing a fair and impartial jury" to be a "perfectly valid consideration" in determining whether to deny access).

The news organizations contend that D.C. Circuit precedent precludes this Court from finding that immediate release of the grand jury tapes poses an unfair risk of prejudice to the defendant's right to receive a fair trial. Given the fact-specific nature of the required balancing of interests, however, it is important to note that the published D.C. Circuit cases cited by the news media are factually distinguishable from the circumstances with which we are now faced.[2] *Cottone v. Reno*, 193 F.3d 550 (D.C. Cir. 1999), *United States v. Mitchell*, 551 F.2d 1252 (D.C. Cir. 1976), *rev'd on other grounds sub nom. Nixon v. Warner Communications*, 435 U.S. 589 (1978), and *Jenrette* all presented the D.C. Circuit with the issue of whether the public should be granted access to the relevant audio tapes *after* the conclusion of a trial.[3] At that stage, the court has considered any concern regarding prejudice to be diminished by the "speculative" nature of the prospect of a retrial. *See, e.g., Jenrette*, 653 F.2d at 616. None of these cases, however, provide any guidance on the risk of prejudice that may exist where the media is allowed access to audio tapes for inspection and copying *while the defendant's trial is ongoing*.

In support of their contention that immediate, as opposed to post-trial, access to the grand jury tapes is warranted, the news organizations cite to *In re Nat'l Broad. Co. (United States v. Myers)*, 635 F.2d 945 (2d Cir. 1980), *Valley Broad. Co. v. U.S. Dist. Court for Dist. of Nevada*,

---

[2] The media's reliance upon the D.C. Circuit's *unpublished* decision in *United States v. Thompson*, 1989 WL 248625 (D.C. Cir. Oct. 13, 1989), is unpersuasive because, like the published decisions that have been issued by the D.C. Circuit, *Thompson* is distinguishable on the facts. *Thompson* involved the immediate release of *transcripts*, rather than audiotapes. In this case, the press will have access to transcripts of Mr. Libby's testimony. The only issue is whether the media should also be given immediate access to the tapes themselves. Further, *Thompson* presented a different posture, an appeal from a denial of a motion for stay, and thus different standard of review, than is presented here.

[3] Additionally, neither *Cottone* nor *Mitchell* presented a situation where a criminal defendant, asserting his constitutional rights, objected to the public's physical access to the relevant evidence. Rather, *Cottone* involved a *defendant's* request for access to tapes admitted at *his own* trial, and *Mitchell* involved an objection to press access made by a third party who was not on trial.

798 F.2d 1289 (9th Cir. 1986), and the Fourth Circuit's unpublished decision in *In re Associated Press* (*United States v. Moussaoui*), 172 Fed. Appx. 1, 6 (4th Cir. 2006).[4] Other circuits, however, highlighting the danger of adverse publicity, have suggested that there may, under certain circumstances, be an impermissible risk of "jury taint" involved in the release of audio tapes in evidence during the pendancy of a trial. *See Edwards*, 672 F.2d at 1295-96; *Beckham*, 789 F.2d at 410 & n.3. Indeed, immediate release of the grand jury tapes does pose particularly heightened and intolerable risks on the specific facts of this case. Although it cannot be assumed that the jury will ignore this Court's warnings to pay no attention to reports on this case that appear in the news media, likewise it cannot be ignored that this is a politically-charged trial, taking place in the most politically-aware city in the nation; press scrutiny has been intense and the risk of inadvertent taint is not insignificant.

Furthermore, credibility is the central issue in this case, and the best way for jurors to assess Mr. Libby's credibility is to listen to him. Under this circumstance, Mr. Libby's right to a fair trial requires that the environment in which jurors are exposed to Mr. Libby's voice be controlled to the extent possible. Given the particular importance of credibility, and the concomitantly heightened importance attached to hearing Mr. Libby's testimony, the potential for prejudice created by the media's ability to publish soundbites of that testimony, completely out of its proper context, is greater than any potential for prejudice created by their ability to manipulate textual exhibits.

Mr. Libby acknowledges that any assessment of risk inherently involves some amount of speculation, but submits that the danger of juror taint in this case, far from being remote, is pressing enough at this stage of proceedings to outweigh any interest in immediate access to

---

[4] It is worth noting that in *Moussaoui*, the district court had denied the press immediate access to *all* trial exhibits, textual and otherwise. The Fourth Circuit thus had no occasion to assess the merits of a defendant's objection where, as here, he asks only that particular audio recordings not be immediately released.

judicial records. As the Fifth Circuit has stated, "[a] forecast of future difficulty is by definition uncertain, but equally uncertain is the rejection of that forecast. . . . It is better to err, if err we must, on the side of generosity in the protection of a defendant's right to a fair trial before an impartial jury." *Belo Broad. Corp.*, 654 F.2d at 431.

In addition to concerns regarding the fairness of this trial, another consideration weighing strongly in favor of denying the news organizations immediate physical access to the grand jury tapes is the fact that the press will be permitted "considerable access to the taped [testimony] through the trial itself and through publication of the printed transcripts." *Warner Communications*, 435 U.S. at 599. Where "testimony has already been made . . . aurally accessible in the courtroom and the transcript has been widely distributed and publicized," the public's interest in knowing the contents of evidence adduced against the accused has been satisfied, and "any [additional] interest in gaining access to the [audio] recording is only marginal." *United States v. McDougal*, 103 F.3d 651, 658 (8th Cir. 1996).

## CONCLUSION

For the reasons stated above, Mr. Libby respectfully requests that the Court deny the news organizations' Application for Access to Trial Exhibits Played to the Jury.

Dated: February 3, 2007

*/s/ Theodore Wells Jr. (BBP)*
Theodore V. Wells, Jr.
(D.C. Bar No. 468934)
James L. Brochin
(D.C. Bar No. 455456)
Paul, Weiss, Rifkind, Wharton
 & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3089

*/s/ John D. Cline (BBP)*
John D. Cline
(D.C. Bar No. 403824)
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104
Tel: (415) 626-3939

Respectfully Submitted,

*/s/ William Jeffress (BBP)*
William H. Jeffress, Jr.
(D.C. Bar No. 041152)
Alex J. Bourelly
(D.C. Bar No. 441422)
Baker Botts LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 639-7551

# CERTIFICATE OF SERVICE

I, James L. Brochin, certify that true and correct copies of Mr. Libby's Opposition to Application for Access to Trial Exhibits Played to the Jury were served by electronic mail on the 3rd day of February, upon the parties listed below:

Attorney for the Media Applicants

> John B. O'Keefe
> Levine Sullivan Koch & Schulz, L.L.P.
> 1050 17th Street N.W., Suite 800
> Washington, D.C. 20036-5514

Attorneys for Department of Justice

> Patrick Fitzgerald, Esq.
> Office of Special Counsel
> Bond Building
> 1400 New York Avenue, N.W.
> Ninth Floor
> Washington, D.C. 20530
> 202-514-1187

_____
James L. Brochin