IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------------- x
                                         :
IN RE                                    :
                                         :
UNITED STATES OF AMERICA,                :
                                         :
    vs.                                  :   Misc. Case No. 07-0052 (RBW)
                                         :
I. LEWIS LIBBY,                          :   HEARING REQUESTED
                                         :
Criminal Case No. 05-394 (RBW)           :
                                         :
---------------------------------------- x

RECEIVED
FEB - 5 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**MEDIA APPLICANTS' REPLY TO I. LEWIS LIBBY'S OPPOSITION TO
APPLICATION FOR ACCESS TO TRIAL EXHIBITS PLAYED TO THE JURY**

The law of this Circuit makes clear that the burden is on the party opposing access to audiotape evidence to present compelling reasons why the very strong presumption in favor of access may be overcome. The Defendant here has utterly failed to meet that burden. To the contrary, the Defendant's Opposition actually strengthens the case for access made in the Media Applicants' initial Application. Most of the Opposition is dedicated to rebutting a constitutional argument that the Application barely mentioned. Otherwise, it rests almost entirely on a discussion of cases from several other jurisdictions that *expressly disagree* with the D.C. Circuit's position on the right to copy audiotapes once they are played to the jury. Put another way, after objecting to the release of audiotapes of the Defendant's grand jury testimony on the incorrect presumption that "I don't think this has ever happened in this Court," *see* Trial Tr. 2/1/2007 P.M. Session at 104:25-105:1, the Defendant has failed to identify even a single instance in this Circuit (or, for that matter, in any other federal court with analogous law) where the issue has arisen and "this" has *not* happened. Quite simply the Defendant has presented no basis for this Court to conclude that access to the audiotape evidence may be denied.

## I. IT IS NOT NECESSARY FOR THE COURT TO REACH THE FIRST AMENDMENT ISSUE

Remarkably, more than half of the Opposition is devoted to the argument that the First Amendment does not grant an independent right of access to copy trial exhibits over and above the well-established common law right, which the Opposition concedes exists. *See* Opp. at 1-5. That the Defendant's primary argument seeks to rebut a point mentioned in just one or two sentences of a fourteen-page Application, *see* Appl. at 2, is itself a telling sign that responding to the rest was a far more difficult task. In fact, contrary to the Defendant's view, the Fourth Circuit recently held that *both* the First Amendment and the common law provide a right to copy trial exhibits, including audiotapes. *See In re Associated Press (Moussaoui)*, 172 Fed. Appx. 1, 6 (4th Cir. 2006). Moreover, other Circuits have recognized that the issue is an open question in light of the Supreme Court's decision in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), and its progeny, but have found it unnecessary to resolve this largely abstract question because the common law right of access is not materially different from the First Amendment right. *See, e.g., United States v. Criden*, 648 F.2d 814, 821-22 (3d Cir. 1981).

This Circuit has likewise always found the common law to be a sufficient basis to require access. *United States v. Mitchell*, 551 F.2d 1252, 1260 (D.C. Cir. 1976) ("[T]he [common law] right is fundamental to a democratic state. . . . Like the First Amendment, . . . the right of inspection serves to produce 'an informed and enlightened public opinion.'"), *rev'd on other grounds sub nom. Nixon v. Warner Communications*, 435 U.S. 589 (1978). This Court should reach the same conclusion in this case.

## II. D.C. CIRCUIT PRECEDENT REQUIRES THE VERY STRONG PRESUMPTION THAT THE PUBLIC HAS A RIGHT TO COPY AUDIOTAPE EVIDENCE AS SOON AS IT IS PLAYED TO THE JURY

Next, the Opposition tries to narrow the import of the unbroken line of authority in this Circuit and in this Court supporting the release of audiotape evidence. First, the Defendant relies extensively on *Nixon v. Warner Communications*, 435 U.S. 589 (1978), implying that *Nixon* is the definitive authority on the common law right of access to such tapes. *Nixon*, however, expressly did "not undertake to delineate precisely the contours of the common law right", *id.* at 599, because there was a congressional statute that governed access to the White House tapes, *id.* at 606-07. The D.C. Circuit, by contrast, *has* "delineated precisely the contours" of the common law right, and it is that precedent which plainly governs this Application.

Turning to this Circuit's precedent, the Defendant maintains that all previous cases are "factually distinguishable" and that the Circuit has never "provide[d] any guidance" on the issue of access to evidence "while the defendant's trial is ongoing." Opp. at 6. This argument is simply wrong. In *Mitchell* there was no real dispute that access during the trial itself was not feasible due to the "administrative and mechanical difficulties" of copying twenty-two hours of reel-to-reel tape with 1970s-era technology. *See* 551 F.2d at 1256. No such difficulties are presented here. In fact, the Court itself need not do anything to distribute the tapes, just as it has not been involved in distributing all other trial exhibits.

In *In re National Broadcasting Company*, 653 F.2d 609, 612 (D.C. Cir. 1981) (hereinafter "*Jenrette*"), the issue simply did not arise during the trial. The rationale of both cases, however, plainly supports contemporaneous access, particularly in light of the arguments advanced by the Defendant here. Both cases held that, even assuming a re-trial were to occur, the potential prejudice to *future jurors* would not justify restrictions on access. If that is so, then

any claim of prejudice to jurors who already listened to the tape in court could not possibly be sufficient to justify abrogation of the strong presumption in favor of access.

Lest there be any doubt, however, *Cottone v. Reno*, 193 F.3d 550 (D.C. Cir. 1999), expressly held that *Mitchell* and *Jenrette* "make it clear that audio tapes enter the public domain once played and received into evidence", and further noted that such tapes must be treated no differently than "the court reporter's transcript, the parties' briefs, and the judge's orders and opinions", all of which are available to the public as soon as they are filed. *Id.* at 554. Moreover, Libby's attempt to distinguish *United States v. Thompson*, No. 89-3160, 1989 WL 248625 (D.C. Cir. Oct. 13, 1989) (*per curiam*), is equally unavailing. While it is correct that the technical issue in that case was whether the press should have contemporaneous access to *transcripts* of wiretapped audio recordings once the tapes were played to the jury, the reason the Court had no concern with releasing the transcripts was that "the press will have access to both the tapes and the expert testimony [explaining who was speaking on the tapes,]" and therefore "the press could generate its own transcripts." *Id.* And the Defendant does not even attempt to address the *Hinckley* case, which expressly required the contemporaneous release of the defendant's private telephone conversations. *See In re American Broad. Cos. (Hinckley)*, 537 F. Supp. 1168, 1173 (D.D.C. 1982).

Moreover, if there were any lingering doubt about the law in this Circuit regarding contemporaneous release of audiotape exhibits, it is erased by the cases the Defendant cites from other jurisdictions. The Opposition relies on five cases from other Circuits, all of which addressed the precise issue presented in this Application, *i.e.*, access to a tape "while the defendant's trial is ongoing." Opp. at 6. Remarkably, four of those cases found it necessary to deny contemporaneous access on the grounds that they *expressly disagreed* with both the D.C.

4

Circuit's view of the common law right and the rationale of *In re National Broadcasting Company (Myers)*, 635 F.2d 945 (2d Cir. 1980), which the D.C. Circuit has repeatedly quoted at length. *See United States v. McDougal*, 103 F.3d 651, 657 (8th Cir. 1996) ("[W]e decline to adopt in toto the reasoning of the Second, Third, Seventh and District of Columbia Circuits in recognizing a 'strong presumption' in favor of the common law right of access[.]"); *United States v. Beckham*, 789 F.2d 401, 414 (6th Cir. 1986) (criticizing the basis of the "District of Columbia Circuit['s] conclusion that 'the common law right is fundamental'" and noting that the court "respectfully disagree[s] that only the most extraordinary reasons justify a restriction on the common-law right"); *United States v. Edwards*, 672 F.2d 1289, 1294 (7th Cir. 1982) ("[W]e are unwilling to go as far as the Second Circuit's statement that only exceptional circumstances will justify non-access . . . ."); *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 433 (5th Cir. 1981) (explaining "[o]ur fundamental difference with both [*Jenrette* and *Myers*]"). The only case the Defendant cites from another Circuit that follows the D.C. Circuit's view, *United States v. Criden*, 648 F.2d 814 (3d Cir. 1981) (cited by Opp. at 5), in fact held that the district court had abused its discretion when it denied access to videotapes based on speculation that release of the tapes might prejudice the fairness of the trial.

Thus, each of the cases the Defendant points to in which contemporaneous access was denied adopted a view of the law that is in conflict with that of this Circuit and obviously may not be followed by this Court. Moreover, the very fact that those Circuits all felt it necessary to reject the D.C. Circuit's standard in deciding to foreclose access suggests that all recognized that D.C. Circuit law would require a different result. This line of cases thus provides very compelling support for granting the instant Application.

Moreover, even if this case were being litigated within a jurisdiction that followed those other Circuits, almost none of the cases cited in the Opposition support the argument that release of an audiotape during a trial poses a threat to the fairness *of the same trial*. For example, *United States v. McDougal* had nothing to do with that issue, nor did it really have anything to do with the broader question of access to taped evidence at all. In *McDougal*, the Eighth Circuit denied access to a videotape of testimony by former President Clinton that was offered in lieu of his appearance at trial, primarily on the grounds that, like the testimony of a witness who appears in court, such testimony is not *evidence* to which the common law right attaches. *See* 103 F.3d at 656-57. There are cases that have strongly disagreed with that view, including one from this Court,[*] but that issue need not be resolved here because the audiotapes at issue *are* being introduced as trial evidence.

In *Belo*, access was denied due to "the judge's concern with the rights of a yet-to-be tried defendant", not because the Fifth Circuit found any plausible risk of prejudice to the fairness of the trial in which the tape was introduced. 654 F.2d at 431. Similarly, in *Edwards*, access was denied primarily because the defendant also was facing another trial on separate charges, and the Seventh Circuit seemed far less persuaded that any threat to the present trial would have, standing alone, been a sufficient basis to deny access. 672 F.2d at 1295-96. In fact, other cases in the Seventh Circuit since *Edwards* have rejected the very arguments the Defendant makes here about the fairness of the trial in which the audiotape at issue was introduced. *See, e.g., United States v. Berger*, 990 F. Supp. 1054, 1057 (C.D. Ill. 1998); *United States v. Andreas*, 1998 WL 417768, at *4-5 (N.D. Ill. July 16, 1998).

---

[*] *See In re Application of CBS, Inc.*, 828 F.2d 958 (2d Cir. 1987); *United States v. Poindexter*, 732 F. Supp. 170, 172 n.2 (D.D.C. 1990) (stating that Court would "provide . . . copies to the interested news media" of videotaped testimony of President Ronald Reagan "after the videotape [had been] played at the trial" of former National Security Adviser).

In short, the Opposition is only able to point to one case that denied access due to concern with the fairness of an ongoing trial. *See United States v. Beckham*, 789 F.2d 401, 415 (6th Cir. 1986). That case, however, found it necessary to reach that result by expressly rejecting the views of the D.C. Circuit. On that basis alone, this Court should grant the Application.

### III.  NO FAIR TRIAL ISSUE IS POSED BY THIS AUDIOTAPE

Finally, the arguments the Defendant offers as to why the fairness of this trial would be affected by release of the audiotape are the precise arguments courts have rejected time and again, as discussed at length in the case law cited in the Media Applicants' opening memorandum. The Opposition does not even attempt to address any of that authority. Nor, as a threshold matter, does the Defendant offer any reason why this Court should assume that jurors will disregard the Court's instructions and follow news coverage of the trial. The Defendant points to nothing in the record that would support such an assumption. For that reason alone, the Defendant's objections should be overruled.

The Defendant's only argument is that "the media's ability to publish soundbites of that testimony, completely out of its proper context, is greater than any potential for prejudice created by their ability to manipulate textual exhibits." Opp. at 7. While these Applicants strive not to manipulate or report anything out of context, the reality is that all tapes are subject to being excerpted. If the Defendant's argument were correct, courts would almost never allow audio or video exhibits to be released to the public in criminal trials. Plainly, that is not the case.

Moreover, the Defendant never explains why recordings of his voice might pose a greater threat to the prospects of a fair trial than would the voices of news reporters repeating Mr. Libby's words verbatim, or editorializing about which portions of his testimony were the most significant. Courts have repeatedly rejected the proposition that there is something inherent

7

about audio or video recordings that would make a juror who has already heard the same tape materially more prejudiced than reading or listening to news accounts of the same tape. The Defendant offers no reason why the common-sense conclusions reached by those courts are wrong. *See, e.g., Valley Broadcasting Co. v. U.S. Dist. Court for Dist. of Nevada*, 798 F.2d 1289, 1295 (9th Cir. 1986) ("[T]he curious juror who disobeys his oath by watching a televised report on the trial will be contaminated whether or not the report airs footage from the tapes in evidence . . . .").

To the contrary, "the fact that the tapes were admitted into evidence and played to the jury *weighs heavily in favor of* [permitting copying by the press for public dissemination]." *Jenrette*, 653 F.2d at 614. If there is a danger posed by juror exposure to the media it lies in the fact that news reports may contain information a juror was *not* exposed to in court, or that the editorial decisions a journalist makes about which parts of the trial to emphasize might influence a juror's view of the case. Those concerns would be present regardless of whether a report contained audiotape excerpts of Mr. Libby's grand jury testimony.

Finally, the Defendant's contention that this is a "politically charged" town has already been rejected by the D.C. Circuit as posing any material fair trial concerns in another politically charged case, *see Jenrette*, 653 F.2d at 618, and moreover gets the law exactly backwards. Courts have emphasized repeatedly that the presumption of contemporaneous access to tapes containing the defendant's words or actions is at its apex in "politically charged" cases. *See, e.g., Myers*, 635 F.2d at 952 ("[T]here remains an important and legitimate interest in affording members of the public their own opportunity to see and hear evidence that records the activities of [high public officials.]"). Similarly, the Defendant's point that "the best way for jurors to assess Mr. Libby's credibility is to listen to him," Opp. at 7, is also an argument *for* permitting

public dissemination of the tapes, not the other way around, because the same is true for the public's ability to understand and evaluate the jury's ultimate verdict. Finally, it is perhaps most telling that the Defendant is unable to identify a single case from any jurisdiction in which the release of audio or videotape evidence has *ever* been held to render a trial unfair.

## CONCLUSION

For these reasons, the Media Applicants respectfully request that the Court order the Special Counsel to make such tapes available for copying as soon as practicable following their publication to the jury, in the same manner as all other trial exhibits are handled in this case.

Dated: February 4, 2007

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ LLP

By: _____
David A. Schulz (D.C. Bar No. 459197)
Nathan Siegel (D.C. Bar No. 446253)
Thomas Curley (D.C. Bar No. 473798)
John B. O'Keefe (D.D.C. Bar No. D00289)

1050 Seventeenth Street, NW, Suite 800
Washington, DC 20036
Telephone: (202) 508-1100
Facsimile: (202) 861-9888

*Counsel for Media Applicants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2007, I caused true and correct copies of the foregoing to be served via electronic mail upon the following:

Patrick Fitzgerald, Esq.
Debra R. Bonamici, Esq.
Office of the United States Attorney/Office of the Special Counsel
Northern District of Illinois
219 South Dearborn Street
Chicago, IL 60604

Kathleen Kedian, Esq.
Peter Robert Zeidenberg, Esq.
U.S. DEPARTMENT OF JUSTICE
1400 New York Avenue, N.W.
Washington, DC 20005

John DeWitt Cline, Esq.
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104-1500

William H. Jeffress, Jr., Esq.
Alex Joseph Bourelly, Esq.
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004

Theodore V. Wells, Jr., Esq.
PAUL, WEISS, RIFKIND, WHARTON & GARRISON
1285 Avenue of the Americas
New York, NY 10019-6031

John B. O'Keefe